Stephen Nolan BEDFORD and Autumn Bedford, Appellants

v.

Darin SPASSOFF and 6 Tool, LLC, formerly known as Dallas Dodgers Baseball Club, LLC, d/b/a Dallas Dodgers Baseball, Appellees

NO. 02–15–00045–CV

Court of Appeals of Texas, Fort Worth.

DELIVERED: February 11, 2016

**644**

ATTORNEY FOR APPELLANTS: CHARLES I. KAPLAN, KAPLAN AND MOON, PLLC, DALLAS, TEXAS, AND JASON CHARLES CIAROCHI, CIAROCHI LAW FIRM, PLLC, DALLAS, TEXAS

ATTORNEY FOR APPELLEE: ANDY EDMONDSON, TASS D., WATERSTON, EDMONDSON LAW, GROUP, PLLC, COPPELL, TEXAS

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

## OPINION

BILL MEIER, JUSTICE

### I. INTRODUCTION

In five points, Appellants Stephen Nolan Bedford and Autumn Bedford appeal an interlocutory order denying their motion to dismiss under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003, 51.014(a)(12) (West 2015). We will affirm in part and reverse and remand in part.

### II. BACKGROUND

Appellee Darin Spassoff is the sole owner and president of Appellee 6 Tool, LLC, formerly known as Dallas Dodgers Baseball Club, LLC, d/b/a Dallas Dodgers Baseball, a youth instructional baseball organization. The Bedfords' son was a member of the Dodgers.

At around 10:00 a.m. on September 12, 2014, Stephen sent Spassoff the following text message: "My name is [Stephen] and I need to speak to [you] ASAP to give you a chance to make something right before I start hitting your social media sites." Spassoff called Stephen, who explained that his wife had had an extramarital affair with Terry Cruz, the Dodgers' batting coach.[1] Stephen was "extremely hostile and profane" during the conversation and demanded a refund of the $1,000 participation fee that had been paid for the Fall 2014 season.

Later in the afternoon that same day, Stephen sent Spassoff a number of other text messages, including one in which he questioned the ethics of the Dodgers organization and threatened to display a sign at their games. Just before 6:00 p.m., Stephen forwarded to Spassoff a copy of a message that had just been posted on Facebook using Autumn's account. The post "reviewed" the Dodgers, gave the organization one out of five stars, and stated,

> Be very careful. One of the coaches put my son on the team an[d] then started

---

1. Cruz and Stephen had been coworkers since March 2012, and Cruz had known Autumn since May 2012. Cruz became a part-time coach for the Dodgers in September 2013.

calling and texting my wife. This coach is a home wrecker and the club stands behind him. I guess that's the kind of lessons they plan on teaching the kids. Very unethical and from talking to the executives they don't plan on changing. Please stay away!!!!!!!!!!!!!!!!!!

At around 6:30 p.m., Spassoff's attorney notified Stephen to stop communicating directly with Spassoff and that Appellees were conducting an investigation into Stephen's accusation involving Autumn and Cruz. Thereafter, Stephen sent Spassoff a message that contained a picture of two posters that he had prepared and that stated, "Dodgers coach put my son on a team and then had an affair with my wife!" At 6:56 p.m., Stephen sent Spassoff and his attorney an email that stated, among other things, "I can post any and every truth online, which I plan to do.... I wanted to leave the Dodger organization out of it completely[,] but it seems they have taken a different path." Spassoff cancelled the Dodgers' practice that was scheduled for the following day.

Appellees sued the Bedfords in November 2014. Specifically complaining about the September 12, 2014 Facebook posting regarding the Dodgers, Appellees asserted claims against both Stephen and Autumn for libel and business disparagement. Additionally, Spassoff asserted a claim against Stephen for intentional infliction of emotional distress (IIED), and the Dodgers asserted a claim against Stephen for tortious interference with an existing contract or, alternatively, a claim against Autumn for breach of contract, averring that Stephen had removed his son from the Dodgers organization and had demanded to be reimbursed for the registration fee "through coercive threats and disparaging acts."

The Bedfords timely filed a motion to dismiss that expressly implicated chapter 27 of the civil practice and remedies code. They prayed that Appellees recover nothing, that Appellees be sanctioned, and that they recover reasonable attorneys' fees. The Bedfords also filed an affidavit authored by Stephen, to which Appellees objected. After a hearing at which both sides presented argument, the trial court signed an order sustaining Appellees' objections to Stephen's affidavit and later signed an order denying the Bedfords' motion to dismiss. The Bedfords appeal.

### III. JURISDICTION

■ Directing us to our opinion in *Jennings v. WallBuilder Presentations, Inc.,* Appellees question whether we have jurisdiction to consider an interlocutory appeal from a signed order denying dismissal. *See* 378 S.W.3d 519, 524–29 (Tex.App.–Fort Worth 2012, pet. denied) (construing civil practice and remedies code section 27.008 and holding that interlocutory appeal was limited to circumstances in which motion to dismiss is denied by operation of law). However, as the supreme court has observed, the legislature "has since clarified that an interlocutory appeal is permitted from any interlocutory order denying a motion to dismiss under the TCPA." *In re Lipsky,* 460 S.W.3d 579, 585 n. 2 (Tex. 2015); *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). Appellees filed this lawsuit in November 2014, after the legislature amended section 51.014. *See* Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 4, 2013 Tex. Sess. Law Serv. 2501, 2502 (West) (codified at Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12)). Thus, there is no jurisdictional impediment to this appeal.

### IV. THE TCPA

■ The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *Lipsky,* 460 S.W.3d at 586. Its

purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (West 2015).

Under the TCPA's two-step dismissal process, the initial burden is on the defendant-movant to show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to the [movant's] exercise of," among other things, the right of free speech. *Id.* § 27.005(b) (West 2015). If the movant satisfies this burden, the second step shifts the burden to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

■ We review de novo a trial court's ruling on a motion to dismiss under the TCPA. *United Food & Commercial Workers Int'l Union v. Wal–Mart Stores, Inc.,* 430 S.W.3d 508, 511 (Tex.App.–Fort Worth 2014, no pet.). We consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (West 2015).

## V. THE BEDFORDS' INITIAL BURDEN

■ In their first point, the Bedfords argue that they met their initial burden under the TCPA's expedited dismissal procedure to show by a preponderance of the evidence that all of Appellees' claims are based on, relate to, or were filed in response to their exercise of the right of free speech.

Under the TCPA, the "[e]xercise of the right of free speech" means "a communication made in connection with a matter of public concern," which includes an issue related to "a good, product, or service in the marketplace." *Id.* § 27.001(3), (7)(E) (West 2015).

The Bedfords filed their motion to dismiss pursuant to chapter 27, stating that they were sued "for expressing an opinion on the internet and 'threatening to protest.'" Appellees' libel and business disparagement claims are premised upon the Facebook posting, which stated that a coach began contacting Autumn after the Bedfords' son had joined the Dodgers, that the coach is a "home wrecker," that the Dodgers "stand[ ] behind him," that this is the kind of "lesson[ ]" that the Dodgers planned to teach the team members, and that it was very unethical. Spassoff's IIED claim and the Dodgers' tortious interference claim, which broadly averred that Stephen was liable under those theories on account of the "threats and disparaging" assertions or acts that he directed at Appellees, can only concern the Facebook posting and the texts or emails that Stephen sent to Spassoff on September 12, 2014. The Dodgers' alternative claim against Autumn for breach of contract, which hinges upon allegations that she removed her child from the Dodgers organization and demanded a reimbursement of the non-refundable registration fee, plainly relates to the Facebook posting and texts or emails.

The record thus demonstrates that Appellees' claims are premised upon communications that were made in connection with a matter of public concern—i.e., an issue related to the Dodgers' provision of youth baseball coaching services in the marketplace. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001(3), (7)(E), 27.011(b) (West 2015) (mandating liberal construction of TCPA); *see also Hicks v. Grp. & Pension Adm'rs, Inc.,* 473 S.W.3d 518, 528 (Tex.App.–Corpus Christi 2015, no pet.) (holding individual's email sent to six school board members stating problems she had experienced with Group & Pension Administrators, Inc. when school board

was considering awarding contract to GPA constituted matter of public concern and that trial court erred by denying motion to dismiss); *Kinney v. BCG Attorney Search, Inc.*, No. 03–12–00579–CV, 2014 WL 1432012, at *5 (Tex.App.–Austin Apr. 11, 2014, pet. denied) (mem.op.) (holding individual's post to website stating negative opinions of BCG and other companies owned by BCG's owner constituted matter of public concern because post related to a service in the marketplace). We hold that the Bedfords met their initial burden under the TCPA, and we sustain their first point.

## VI. OBJECTIONS

The Bedfords argue in their second point that the trial court erred by sustaining Appellees' objections to Stephen's affidavit. We have determined that the Bedfords met their initial burden under the TCPA, and they do not argue that the contents of the affidavit are necessary to establish any element of a defense to the Appellees' claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d). Therefore, any error in sustaining Appellees' objections was harmless. *See* Tex. R. App. P. 44.1(a). We overrule the Bedfords' second point.

## VII. APPELLEES' BURDEN

■ In their third point, the Bedfords argue that Appellees failed to establish by clear and specific evidence a prima facie case for each essential element of their claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

■ "[C]lear and specific evidence," as used in the TCPA, requires a plaintiff to "provide enough detail to show the factual basis for its claim." *Lipsky*, 460 S.W.3d at 590–91. "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Id.* at 591.

Appellees argued in their response to the Bedfords' motion to dismiss that they established by clear and specific evidence a prima facie case for each essential element of their libel claim. Appellees did not, however, assert any argument or analysis in an effort to meet their burden as to their business disparagement, IIED, tortious interference, and breach of contract claims. Appellees therefore failed to meet their burden under the TCPA as to those claims, and the trial court erred by denying the Bedfords' motion to dismiss those claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

■ As for Appellees' libel claim, libel is defamation expressed in written or other graphic form. *Id.* § 73.001 (West 2011). A libel plaintiff must prove (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages; in some cases. *Lipsky*, 460 S.W.3d at 593. A statement is defamatory if the words tend to injure the plaintiff's reputation, exposing it to hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue. Tex. Civ. Prac. & Rem. Code Ann. § 73.001. To qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 356 (Tex.App.–Houston [1st Dist.] 2013, pet. denied). But a communication that is merely unflattering, abusive, annoying, irksome or embarrassing, or that only hurts the plaintiff's feelings, is not actionable. *Id.* The court construes the statement as a whole in light of

surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 655 (Tex.1987).

■■■ Moreover, to be actionable, a statement must assert an objectively verifiable fact rather than an opinion. *Bentley v. Bunton,* 94 S.W.3d 561, 580–81 (Tex. 2002). "We classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made." *Am. Heritage Capital, LP v. Gonzalez,* 436 S.W.3d 865, 875 (Tex.App.–Dallas 2014, no pet.). According to one court, a statement is an opinion if it is "by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder" or is "a loose and figurative term employed as metaphor or hyperbole." *Palestine Herald–Press Co. v. Zimmer,* 257 S.W.3d 504, 511 (Tex.App.–Tyler 2008, pet. denied). Whether a statement is a statement of fact or opinion is a question of law. *Am. Heritage Capital, LP,* 436 S.W.3d at 875.

■■■ When the Bedfords' Facebook posting is construed as a whole and in light of the surrounding circumstances, instead of individually and in isolation, as the dissent's analysis proceeds, the gist of the posting is that the Dodgers and Spassoff condone adultery and plan to teach the same to its players. This is not a simple, unflattering statement of opinion. It is a degrading comment, it challenges Appellees' integrity, it has the potential to inflict financial injury upon the Dodgers, and it is verifiably false. Indeed, the Dodgers are a youth instructional baseball organization. In exchange for a fee, team members receive instruction about baseball and have the opportunity to participate in the game. No part of the services provided by the Dodgers has anything to do with condoning adultery. As Spassoff affirmed in his

affidavit, neither he nor the Dodgers condone or approve of adultery between players' parents and coaches.

■■■ Private plaintiffs, like Appellees, must prove that the defendant was at least negligent. *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.,* 416 S.W.3d 71, 82, 85 (Tex.App.–Houston [1st Dist.] 2013, pet. denied). Spassoff testified in his affidavit that Stephen barraged him with numerous text messages or emails and made the Facebook posting before he had an opportunity to gather information and conduct an internal inquiry into Stephen's accusations. *See id.* ("Texas courts have defined negligence in the defamation context as the 'failure to investigate the truth or falsity of a statement before publication, and [the] failure to act as a reasonably prudent [person].' ").

■■■ Finally, when an offending publication qualifies as defamation per se, a plaintiff may recover general damages without proof of any specific loss. *Lipsky,* 460 S.W.3d at 596. This is because defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed. *Id.* Defamation is actionable per se if it injures a person in his office, business, profession, or occupation. *Morrill v. Cisek,* 226 S.W.3d 545, 549 (Tex.App.–Houston [1st Dist.] 2006, no pet.). As explained, the Facebook posting has the potential to inflict financial injury upon the Dodgers' business. Thus, as defamation per se, damages to the Dodgers' reputation are presumed, although the presumption alone will support only an award of nominal damages. *See Lipsky,* 460 S.W.3d at 596.

The dissent contends that the Facebook posting is incapable of constituting defamation per se because no part of it "accuses Mr. Spassoff or the Dallas Dodgers

Baseball Club of lacking a peculiar or unique skill related to baseball or to running a baseball organization." *See Hancock v. Variyam*, 400 S.W.3d 59, 67 (Tex. 2013). This is an overly narrow interpretation of Appellees' business. There can be no doubt that participating in competitive youth sports additionally helps instill confidence, hone social skills, and—particularly relevant here—build character. By accusing Appellees of condoning adultery, a morally unacceptable activity, Stephen has indirectly accused Appellees of lacking a peculiar or unique skill that is necessary for the proper conduct of the Dodgers' business—the moral judgment necessary to appropriately lead a group of youths in furtherance of an extracurricular activity. *See id.* Indeed, Stephen impliedly stressed this very point in the Facebook posting when he wrote, "I guess that's the kind of lessons they plan on teaching the kids. Very unethical.... Please stay away!!!!!!!!!!!!!!!!!!!"

We hold that Appellees met their burden to establish by clear and specific evidence a prima facie case for each essential element of their libel claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Accordingly, the trial court erred by denying the Bedfords' motion to dismiss Appellees' business disparagement, NED, tortious interference, and breach of contract claims, but it did not err by denying the Bedfords' motion to dismiss Appellees' libel claim. We therefore sustain in part and overrule in part the Bedfords' third point.

## VIII. CLAIMS AGAINST AUTUMN

The Bedfords argue in their fourth and fifth points that the trial court should have granted the motion to dismiss as to Au-

tumn because the only allegation relating to her is that her Facebook page was used by Stephen. This complaint was not raised in the Bedfords' motion to dismiss. *See* Tex. R. App. P. 33.1(a); Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (providing that trial court considers pleadings and affidavits when ruling). Further, Appellees asserted a libel claim against both Stephen and Autumn. We have determined that Appellees met their burden under civil practice and remedies code section 27.005(c) as to that claim. Therefore, at this point, dismissal of Appellees' libel claim on its merits is no more appropriate as to Autumn than it is for Stephen. The only issue before the trial court was whether Appellees' claims should survive a TCPA challenge, not how they should be resolved on their merits if they survived. We overrule the Bedfords' fourth and fifth points.

## IX. CONCLUSION

We reverse the trial court's order denying the Bedfords' motion to dismiss as to Appellees' business disparagement, IIED, tortious interference, and breach of contract claims; affirm the order denying the motion to dismiss as to Appellees' libel claim; and remand this cause to the trial court for further proceedings consistent with this opinion and in accordance with the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009 (West 2015).[2]

DAUPHINOT, J., concurs without opinion.

WALKER, J., filed a dissenting opinion.

---

2. The Bedfords argue in their sixth point that we should sanction Appellees in the amount of $20,000 and remand the cause to the trial court to consider an award of attorneys' fees in their favor. The trial court will consider section 27.009 upon remand. We overrule the Bedfords' sixth point.

SUE WALKER, JUSTICE, dissenting

## I. Introduction

I respectfully dissent. Appellees Darin Spassoff and 6 Tool, LLC, formerly known as Dallas Dodgers Baseball Club, LLC, d/b/a Dallas Dodgers Baseball (collectively Dodgers) filed suit for libel based on two written statements. Because as a matter of law the elements of libel cannot be established concerning either of the written statements, I dissent from the majority's failure to reverse the trial court's judgment denying Appellants Stephen Nolan Bedford and Autumn Bedford's motion dismiss the libel claim pursuant to the Texas Citizens' Protection Act (TCPA).[1]

## II. The Alleged Libel

The first factual basis for the Dodgers' libel claim stems from an email sent by Mr. Bedford to Mr. Spassoff (the owner of the Dodgers) threatening to protest at the Dodgers' practice with homemade poster board signs that Bedford had made, photographed, and included in the email. The second factual basis for the Dodgers' libel claim stems from a post on the Dallas Dodgers' Facebook page by Mr. Bedford using Mrs. Bedford's Facebook account and "rating" the Dodgers by giving them one star. Following the one-star rating, the post states, in toto:

> Be very careful. One of the coaches put my son on the team an [sic] then started calling and texting my wife. This coach is a home wrecker and the club stands behind him. I guess that's the kind of lessons they plan on teaching the kids. . Very unethical and from talking to the executives they don't plan on changing. Please stay away[.]

## III. No Publication of the Email

Concerning Mr. Bedford's email to Mr. Spassoff, the email (with photos of his handmade poster board signs attached) as a matter of law cannot form the basis of the Dodgers' libel claim because the email was not published to a third party. *See, e.g., In re Lipsky*, 460 S.W.3d 579, 593 (Tex.2015) (orig.proceeding) (setting forth elements of libel with first element being "the publication of a false statement of fact to a third party"); *Lyle v. Waddle*, 144 Tex. 90, 92–93, 188 S.W.2d 770, 771–72 (1945) (holding that publication is an essential element of a libel action and that without publication, there is no libel); Tex. Civ. Prac. & Rem.Code Ann. § 73.001 (West 2011) (defining libel as a writing injuring reputation; a person's reputation is not injured by a publication solely to that person, hence the requirement of publication to a "third party"). No evidence exists in the record (nor even any allegation) that Mr. Bedford's email to Mr. Spassoff was sent to anyone except Mr. Spassoff. Consequently, the Dodgers failed to

---

1. I agree with the majority's conclusions that, applying the required de novo standard of review, the Bedfords—as movants seeking a dismissal under the TCPA—established that the Dodgers' claims against them were based on, related to, or in response to, the Bedfords' exercise of free speech; the burden therefore shifted to the Dodgers to establish by clear and specific evidence a prima facie case for each essential element of every claim asserted against the Bedfords; and, although the Dodgers pleaded claims against the Bedfords for libel, business disparagement, intentional infliction of emotional distress, and tortious interference with an existing contract or alternatively breach of contract, the Dodgers made no effort to meet their burden of establishing by clear and specific evidence a prima facie case on any claims except libel. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c) (West 2015). Accordingly, I agree that, applying the required de novo standard of review, the trial court erred by denying the Bedfords' motion to dismiss these claims.

I further agree with the majority's conclusion that any error by the trial court in sustaining the Dodgers' objections to Mr. Bedford's affidavit was harmless.

meet their burden of establishing by clear and specific evidence a prima facie case for the essential element of publication in their libel claim.[2]

## IV. THE POST IS NOT DEFAMATORY, AND THE DODGERS FAILED TO ESTABLISH DAMAGES

Concerning the post Mr. Bedford made to the Dallas Dodgers' Facebook page, the Dodgers failed to establish by clear and specific evidence a prima facie case for the required elements that (1) a statement in the post was defamatory[3] and (2) they suffered damages. *See, e.g.,* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (defining libel as a defamatory statement made in writing); *Lipsky,* 460 S.W.3d at 593 (recognizing that damages constitute an essential element of a libel claim).

### A. No Defamatory Statement Concerning Spassoff or the Dodgers

Whether a false statement is capable of a defamatory meaning is initially a question of law for the court. *Hancock v. Variyam,* 400 S.W.3d 59, 67 (Tex.2013); *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 655 (Tex.1987). Whether a publication is false and defamatory depends upon a reasonable person's perception of the entire publication. *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 115 (Tex.2000). We construe an alleged defamatory statement "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *New Times, Inc. v. Isaacks,* 146 S.W.3d 144, 154 (Tex.2004). A statement may be false, abusive, unpleasant, or objectionable without being defamatory in light of the surrounding circumstances. *Double Diamond, Inc. v. Van Tyne,* 109 S.W.3d 848, 854 (Tex.App.–Dallas 2003, no pet.). Moreover, to be actionable, a statement must assert an objectively verifiable fact rather than an opinion. *Neely v. Wilson,* 418 S.W.3d 52, 62 (Tex.2013); *Carr v. Brasher,* 776 S.W.2d 567, 570 (Tex.1989) ("[A]ll assertions of opinion are protected by the [F]irst [A]mendment. . . ."). We classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made. *Bentley v. Bunton,* 94 S.W.3d 561, 581 (Tex.2002).

Looking to the circumstances surrounding Mr. Bedford's allegedly defamatory statements in his post and how a person of ordinary intelligence would perceive them, I note that the statements were made in a post on the Dodgers' Facebook page after Mr. Bedford gave the Dodgers a one-star rating. A consumer's rating of a business and comments supporting the rating are designed to be an expression of that one consumer's experience with and opinion of the business.[4] A person of ordinary intelligence perceives the ratings and reviews made by consumers on a business's Facebook page as reflecting the opinion of that consumer. In the post, Mr. Bedford as-

---

**2.** Although the majority sets forth publication to a third party as a required element of libel, its analysis wholly omits any mention of what purported clear and specific evidence exists on this required element.

**3.** Neither the majority nor the Dodgers identify a specific allegedly defamatory sentence or statement within the post; instead, they glommed the entire post together and call it generally defamatory. Consequently, I address

each of the statements in the post to show that none are defamatory.

**4.** *See* https://www.facebook.com/help/434605260012677/ (explaining that ratings and reviews must focus on the product or service offered by the Page and be based on personal experience) (last visited February 5, 2016).

cribed his opinion as to why a coach put his son on the team—as pretext to start calling and texting his wife. Why a player is placed on a team is not an objectively-verifiable fact. To the extent the statement says the coach called and texted Mrs. Bedford, this fact is true.[5] True statements cannot form the basis of a defamation complaint. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex. 1995). Mr. Bedford also expressed his opinion that "this coach" (not Mr. Spassoff or the Dallas Dodgers Baseball Club) is a "home wrecker" and his opinion that "the club stands behind him." Whether a person is a home wrecker is not an objectively-verifiable fact. *See, e.g., McConnell v. Coventry Health Care Nat'l Network,* No. 05–13–01365–CV, 2015 WL 4572431, at *10 (Tex.App.–Dallas July 30, 2015, pet. denied) (mem.op.) (holding statement that doctor's comments were "unprofessional" was an opinion and not an objectively verifiable fact); *Ruder v. Jordan,* No. 05–14–01265–CV, 2015 WL 4397636, at *5 (Tex. App.–Dallas July 20, 2015, no pet.) (mem. op.) (holding seller's post on Zillow giving relator low rating and stating that seller had been asked if relator's conduct was attributable to "incompetence, unstable mind, or rage induced by re[j]ection" was not objectively verifiable and was a nonactionable expression of opinion). And whether a business will "stand behind" a worker is not an objectively-verifiable fact.[6] Mr. Bedford articulated his opinion that "I guess that's the kind of lessons they plan on teaching the kids." This is likewise not an objectively-verifiable fact but constitutes only Mr. Bedford's specula-

tion. Mr. Bedford stated his opinion that the conduct was "unethical" and that "they don't plan on changing." A business's "ethics" in dealing with an independent contractor's noncriminal conduct not related to job performance is not an objectively-verifiable fact. *Compare Double Diamond, Inc.,* 109 S.W.3d at 855 (holding statement of opinionated criticism not actionable), *with Cummins v. Bat World Sanctuary,* No. 02–12–00285–CV, 2015 WL 1641144, at *2, *8 (Tex.App.–Fort Worth Apr. 9, 2015, pet. denied) (mem.op.) (holding statements—that wild colony of bats outside the building had mites and included rabid bats, that owner of facility did not properly quarantine sick bats, did not notice when a bat fell in a trash can and neglected her own dogs—were objective verifiable statements of fact). Simply put, as a matter of law, viewing the entire posting as a whole in the context it was made—as a post on the Dodgers' Facebook page after giving the business a one-star rating, a person of ordinary intelligence would view every statement by Mr. Bedford as an expression of his own opinion. *See, e.g., Avila v. Larrea,* 394 S.W.3d 646, 659 (Tex.App.–Dallas 2012, pet. denied) (explaining that a statement is opinion if it is "by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder"). The gist of Mr. Bedford's post is his complaint that his wife decided to become romantically involved with a batting coach for the Dodgers and his dissatisfaction with the Dodgers' handling of the situation; Mr. Bedford's post, at most, is opinionated criticism. *See, e.g., Double Diamond, Inc.,*

---

5. In their brief, the Dodgers explain that the day after Mr. Bedford's post, "the coach" mentioned in the post "admitted to working privately with the Bedfords' son and 'hooking up' with Mrs. Bedford, but was adamant that the relationship 'had nothing to do with baseball.'"

6. In their brief, the Dodgers state that "the coach" was a batting coach who was an independent contractor with the organization.

109 S.W.3d at 855; *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875–76 (Tex.App.–Dallas 2014, no pet.) (holding none of the posts by defendant on "various internet websites"—that "[t]he guy that was supposed to handle closing could barely speak english [sic]'" and that "Chris end [sic] everyone I talked to at this company were incompetent. They reviewd [sic] my credit rating and promised a quick close. Then the list of things got longer and longer"—were as a matter of law non-defamatory statements of opinion).

### B. Even if Post Is Defamatory, It Is Not Defamatory Per Se, and No Damages Were Established

A plaintiff asserting a defamation claim "must plead and prove damages, unless the defamatory statements are defamatory per se." *Lipsky*, 460 S.W.3d at 592. The Dodgers failed to meet their burden of establishing by clear and specific evidence a prima facie case for the essential element of damages from Mr. Bedford's post. The parties' briefing as well as questions during oral argument established that the Dodgers successfully removed Mr. Bedford's comments from the Dodgers' Facebook page within a few weeks. The prayer for relief in the Dodgers' original petition pleads for "actual damages," but neither the Dodgers' peti-

tion, nor the Dodgers' response to the Bedfords' motion to dismiss, nor Mr. Spassoff's affidavit attached to the Dodgers' response to the Bedfords' motion to dismiss, identify any "actual damages" suffered by either Mr. Spassoff or by the Dallas Dodgers Baseball Club as a result of Mr. Bedford's comments that were posted for approximately two weeks.[7] The Dodgers did not plead or prove that any individual actually read Mr. Bedford's post before it was removed. The Dodgers did not plead or prove that the Dodgers received any calls or expressions of concerns regarding the post. The Dodgers did not plead or prove that they lost any clients or ballplayers as a result of the post. In short, the Dodgers did not plead or establish by clear-and-specific evidence a prima facie case for the essential element of damages in their libel claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Thus, the trial court was required to dismiss the Dodgers' libel claim unless Mr. Bedford's post was defamatory per se so that general damages were presumed. *See Hancock*, 400 S.W.3d at 68 (reversing defamation judgment for plaintiff because statements were not defamatory per se and because no evidence of damages existed to support award for defamation per quod).

---

**7.** Mr. Spassoff's affidavit contains one sentence stating that "[t]his conflict with the Bedfords has caused me countless hours of duress." This sentence is insufficient to satisfy the TCPA's clear-and-specific evidence requirement because (1) it bases Mr. Spassoff's duress on "the conflict with the Bedfords" not on damage to his reputation, and (2) such conclusory statements do not rise to clear and specific evidence. *See, e.g.,* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (implying all recoverable damages for libel must stem from written defamatory statement); *Lipsky*, 460 S.W.3d at 592–93 (holding "general averments of direct economic losses and lost profits" do not satisfy the TCPA's clear-and-specif-

ic evidence standard without "specific facts illustrating how Lipsky's alleged remarks about Range's activities actually caused such losses"). To the extent the Dodgers attached evidence to their brief that is not included in the record before this court, I do not consider it. *See* Tex. R. App. P. 34.1 (describing the official appellate record as the clerk's record and reporter's record); *Guajardo v. Conwell*, 46 S.W.3d 862, 864 (Tex.2001) (stating supreme court would not consider a document that was not in the clerk's record); *In re Guardianship of Winn*, 372 S.W.3d 291, 297 (Tex.App.–Dallas 2012, no pet.) (refusing to consider documents not contained in appellate record).

A statement may be defamatory per se if is false and injures a person in his office, profession, or occupation; charges a person with the commission of a crime; imputes sexual misconduct; or accuses one of having a loathsome disease. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex.App.–Austin 2007, pets. denied). Mr. Bedford's post did not impute sexual misconduct to either plaintiff (Mr. Spassoff or the Dallas Dodgers Baseball Club), did not charge either plaintiff with the commission of a crime, and did not accuse either of having a loathsome disease. Thus, the only remaining question is whether the post injured Mr. Spassoff or the Dallas Dodgers Baseball Club in their occupation or profession.

The Texas Supreme Court has held that disparagement of a general character is not enough to constitute defamation per se "unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Hancock*, 400 S.W.3d at 67 (holding statements—that doctor lacked veracity and dealt in half-truths—were not, in the context the statements were made, defamatory per se). The proper inquiry is whether a defamatory statement accuses a professional of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession. *Id.* When a statement is defamatory per se, then the factfinder may presume that the statement injured the plaintiff's reputation, and this presumption will support an award of general damages. *Bentley*, 94 S.W.3d at 604; *see also Downing v. Burns*, 348 S.W.3d 415, 424 (Tex.App.–Houston [14th Dist.] 2011, no pet.) (holding that relators' statements—that former employee, who had worked as an assistant to the relators, had stolen from them and their clients—was defamatory per se).

Here, no statement in Mr. Bedford's post accuses Mr. Spassoff or the Dallas Dodgers Baseball Club of lacking a peculiar or unique skill related to baseball or to running a baseball organization. Even the Dodgers' brief states that the independent-contractor coach's conduct in "hooking up" with Mrs. Bedford had nothing to do with baseball. The Dodgers provide no argument or analysis explaining how Mr. Bedford's post falls within the category of defamation per se.[8] A statement disparaging the Dodgers for not preventing a batting coach from engaging in an extramarital affair or for not disciplining such a coach in some unidentified manner, as apparently desired by Mr. Bedford, is not the disparagement of a character or quality that is essential to the business of operating a baseball club. At most, it is a general disparagement. *See Hancock*, 400 S.W.3d at 68 (recognizing that "[i]f an accusation of untruthfulness is defamatory per se for a physician in her profession, it would likewise be defamatory per se for other trades, businesses, and professions that rely on human interaction"). An accusation on a business's Facebook page as a "ratings and reviews" comment that the business did not prevent an employee's extramarital affair with a client and did not properly discipline the employee or handle the situation is defamatory per se only if it would likewise be defamatory per se for all other trades, businesses, and professions that rely on human interaction. I cannot agree with the majority that Mr. Bedford's post, even if defamatory, was so egregious and obviously injurious to the reputation of Mr. Spassoff and of the Dal-

---

8. The majority nonetheless categorizes Mr. Bedford's post as statements of fact constituting defamation per se and presumes Mr. Spassoff and the Dallas Dodgers Baseball Club suffered "mental anguish and loss of reputation" damages from the post.

las Dodgers Baseball Club that damages to Mr. Spassoff's reputation or to the Dallas Dodgers Baseball Club can be presumed as a matter of law by the approximately two-week-long post.

Accordingly, I would sustain the Bedfords' third point in toto.[9]

### V. CONCLUSION

For the above reasons, I would hold that the trial court erred by failing to dismiss all of the Dodgers' claims against the Bedfords, including the libel claim, and I would remand the case to the trial court for further proceedings in accordance with the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005(b), (d), .006, .007, .009 (West 2015). Because the majority holds otherwise, I respectfully dissent.

---

9. Based on my disposition of the Bedfords' third point, it would be unnecessary to address their fourth and fifth points. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary for disposition of appeal).